Filed 10/31/13  In re A.F. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.F., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>A.F.,<br><br>        Defendant and Appellant. | A137848<br><br>(Contra Costa County<br>Super. Ct. No. J1100782) |

A.F. appeals from an order committing her to juvenile hall and directing her to complete a program known as Girls in Motion.  She contends the juvenile court abused its discretion by ordering such a restrictive placement.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The Contra Costa County District Attorney filed a juvenile wardship petition on October 12, 2011, alleging that A.F., then 13 years old, had committed felony assault by force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)).  As set forth in the probation officer's report, A.F. showed up at a school where she was not a student to fight another minor.  A.F. punched the victim in the face multiple times and then struck the victim in the face with her knee, causing the victim's nose to bleed.  At the conclusion of the fight, A.F. held the victim by her hair and threw her into the path of an oncoming car, which stopped before striking the victim.  After her arrest, A.F. admitted assaulting the victim but claimed it was "a mutual fist fight."  A.F. also admitted being

1

suspended from school earlier the same day after being involved in a different fight. Although she denied gang affiliation, A.F. admitted associating with Norteño gang members and claimed not to like the color blue.

The district attorney amended the petition to add a misdemeanor count of assault by force likely to produce great bodily injury. A.F. admitted the misdemeanor assault charge in exchange for dismissal of the felony assault charge. On October 31, 2011, the juvenile court adjudged A.F. a ward of the court and placed her on home probation subject to juvenile electronic monitoring (JEM). The court imposed various terms and conditions of probation, including conditions requiring her to avoid gang activity, to participate in anger management counseling, to obey a curfew, and to attend school.

On April 17, 2012, the probation department filed a notice of probation violation alleging that A.F. failed to comply with her curfew and had been suspended from school. As set forth in the probation officer's report, A.F. had been incorrigible at home and had left home without permission on numerous occasions, both before and after curfew. A.F.'s mother reported that A.F. had been detained for shoplifting on two separate occasions. At a hearing held on April 18, 2012, A.F. admitted that she had violated the terms of her probation as a result of being suspended from school and failing to adhere to her curfew. The district attorney expressed concern that A.F. was not taking her probation seriously in that she continued to disobey rules at home, engaged in problematic behavior, and refused to take medication. The court ordered A.F. to serve a weekend in juvenile hall and to be placed in a home supervision program for 75 days.

In a second notice of probation violation filed on January 9, 2013, the probation department alleged that A.F. had left home without permission, was missing for three days, and had failed to attend independent study or turn in her homework. The probation officer reported that A.F.'s family had contacted the police after A.F. failed to return home. According to A.F.'s mother, A.F. had been incorrigible at home. It was reported that A.F. had a "chaotic academic history" that included being expelled from school. In addition, her school discipline record was "littered with entries" documenting incidents in which she had bullied and intimidated other students.

At a hearing conducted on January 10, 2013, A.F. admitted that she violated the terms of her probation as alleged in the notice of probation violation. The court ordered her to undergo a mental health assessment and to be screened for the Girls in Motion program. The mental health assessment ordered by the court recommended that A.F. be placed in a "highly structured setting for a significant period of time such as the [Girls in Motion] program at Juvenile Hall." The disposition report prepared by the probation department contained the same recommendation.

At the disposition hearing on January 25, 2013, the juvenile court continued A.F. as a ward of the court and ordered her to be placed at juvenile hall until she completed the Girls in Motion program. The court found that A.F.'s maximum period of confinement was 12 months and awarded her 44 days credit for time served. A.F. filed a timely appeal from the court's dispositional order.

## DISCUSSION

A.F.'s sole contention on appeal is that the juvenile court abused its discretion by committing her to the Girls in Motion program at juvenile hall. She contends it was an abuse of discretion to commit her to a locked facility when it would have been in her best interest to stay at home and receive mental health services.

We review a "juvenile court's commitment decision for abuse of discretion, indulging all reasonable inferences to support its decision." (*In re Antoine D.* (2006) 137 Cal.App.4th 1314, 1320.) A court does not necessarily abuse its discretion by ordering the most restrictive placement before other, less restrictive options have been tried. (*In re Eddie M.* (2003) 31 Cal.4th 480, 507.) We do not lightly substitute our judgment for that of the juvenile court and will not disturb its findings if they are supported by substantial evidence. (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329.) Substantial evidence is evidence that is " 'reasonable, credible, and of solid value—from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof.' " (*In re Jorge G.* (2004) 117 Cal.App.4th 931, 942.)

Here, there is substantial evidence to support the juvenile court's findings. As set forth in the mental health assessment ordered by the court, A.F. did not take

3

responsibility for her violent behavior and denied the characterization of her as set forth in the probation officer's report. According to the psychologist who conducted the assessment, A.F. "spent a long time portraying herself as being wrongfully accused" and "had an answer for everything and usually someone else is to blame." A.F. smiled and looked directly at the psychologist while claiming she would never hurt anyone. The psychologist stated that "[o]ne of the primary goals of treatment should be to address [A.F.'s] destructive, volatile behaviors and her inability to take responsibility for her actions." The psychologist also noted that treatment should address A.F.'s "poor judgment, lack of self-control, and . . . how her actions and lack of concern impact the safety and well-being of others." In sum, the psychologist recommended that A.F. be placed in a highly structured and supervised clinical setting such as the Girls in Motion program at juvenile hall. The probation officer concurred with the recommendation and noted that A.F. had been found suitable for placement in the Girls in Motion program. The conclusions and recommendation of the mental health assessment constitute substantial evidence supporting the juvenile court's order. (See *In re Robert H., supra,* 96 Cal.App.4th at p. 1329 [court was entitled to evaluate the weight to be afforded the psychological evaluation and to accept the recommendations of the probation officer].)

There is no merit to A.F.'s claim that it would have been in her best interest to be returned to home probation for a third time. She had already failed at that less restrictive alternative. Indeed, the juvenile court gave her two chances to succeed on home probation, and she squandered those opportunities. Her lack of success on two prior grants of home probation refutes her assertion that a third grant would have been in her best interest.

Moreover, A.F. was not committed to the most restrictive placement, the Department of Juvenile Facilities (DJF), but was instead ordered to serve time in juvenile hall, which is required by statute to be a " 'safe and supportive homelike environment.' " (See *In re Luisa Z.* (2000) 78 Cal.App.4th 978, 987.) In any event, courts do not necessarily abuse their discretion in ordering a juvenile to even the most restrictive placement of DJF before all less restrictive options have been tried, especially in the case

4

of a violent, absconding minor such as A.F.  (See *In re Eddie M., supra,* 31 Cal.4th at p. 507.)

A.F. relies on *In re Aline D.* (1975) 14 Cal.3d 557 to assert she was merely marginally delinquent and thus had no need to be placed in a locked facility.  *Aline D.* is inapposite.  In that case, it was undisputed the mentally impaired girl was unsuitable for commitment to the California Youth Authority, the precursor to DJF.  (*Id.* at p. 561.) Nevertheless, the court sent the minor there because there was no suitable alternative placement.  (*Id.* at p. 562.)  Here, in contrast to *Aline D.,* A.F. was not committed to DJF. Instead, she was committed to juvenile hall, a less restrictive placement option, because it directly addressed her rehabilitative needs.

On this record, we discern no abuse of discretion in ordering A.F. to complete the Girls in Motion program at juvenile hall.

## DISPOSITION

The dispositional order is affirmed.


_____
McGuiness, P.J.


We concur:


_____
Siggins, J.


_____
Jenkins, J.

5